UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL MCCLURE,

      Plaintiff,

                                    Civil Case No. 17-13106

v.                                   Honorable Linda V. Parker

ANDREW LEAFE, JAMES MACKIN,
CHRISTOPHER SMITH, &
CURAYTOR LLC,

      Defendants.
_____/

## OPINION AND ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANTS' MOTION TO DISMISS [ECF NO. 16]

Plaintiff initiated this lawsuit, a shareholder oppression case, against

Defendants Andrew Leafe, James Mackin, Christopher Smith, and Curaytor LLC

(collectively "Defendants") on September 21, 2017.  (ECF No. 1.)  On October 31,

2017, Defendants filed a motion to dismiss.  (ECF No. 10.)  In response, Plaintiff

filed an amended complaint on December 5, 2017.  (ECF No. 12.)  Presently

before the Court is Defendants' second motion to dismiss Plaintiff's amended

complaint, filed January 9, 2018.  (ECF No. 16).  Finding the legal arguments in

the parties' briefs sufficient, the Court is dispensing with oral argument pursuant to

L.R. 7.1(f)(2).  For the reasons stated below, the Court grants, in part, and denies,

in part, Defendants' motion to dismiss.

## I.    Factual and Procedural History

On February 1, 2012, Plaintiff and Defendants Leafe and Mackin formed Frugyl, LLC, a Michigan limited liability company, each owning 33% and functioning under the Frugyl Operating Agreement.  (ECF No. 12 at Pg ID 213; ECF No. 1-2.)  The Frugyl Operating Agreement contained a choice of law provision applying Michigan law to the agreement.  (ECF No. 1-2 at Pg ID 55, § 13.3.)  On August 31, 2012, Defendant Smith joined Frugyl obtaining a 25% interest.  (ECF No. 12 at Pg ID 213.)  Plaintiff and each of the remaining Defendants' interests were equally reduced to 25%.  (*Id.*)

On December 4, 2012, Frugyl registered a Certificate of Assumed Name with the Michigan Secretary of State, establishing the d/b/a as "Curaytor LLC" and operating under the Curaytor name[1].  (*Id.* at Pg ID 213-14.)  Due to disagreements among the members, on December 31, 2012, the parties executed the McClure Amendment.  (*Id*. at Pg ID 214-15; ECF No. 1-3.)  The McClure Amendment made Plaintiff a non-voting member of Frugyl, released him from a non-compete clause with the company and reduced his ownership share to a 10% non-dilutable interest.  (ECF. No. 1-3.)  The McClure Amendment's essential function was to completely eliminate McClure's managerial authority and responsibilities while

---

[1] Although it operated as d/b/a "Curaytor LLC" and under the Curaytor name, the Court will refer to the Michigan LLC as Frugyl.

protecting his ownership interest from actions by Defendants that would result in its *dilution*.

According to Plaintiff, sometime in July 2013, Defendants began efforts to oppress Plaintiff's shareholder distributions by attempting to withhold payments to which he was entitled. (ECF No. 12 at Pg ID 219-21.)

In January 2014, Defendants offered to buyout Plaintiff's interest for $100,000. (*Id.* at Pg ID 221.) Finding the offer substantially lower than the value of his interest, Plaintiff refused Defendants' offer and attempted to engage in negotiations. (*Id.*)

In June 2014, Defendants notified Plaintiff that they were planning to move Frugyl from Michigan to Massachusetts and solicited Plaintiff's input. (*Id.* at Pg ID 222.) After discussing with his attorney and receiving no further correspondence from Defendants, Plaintiff believed the plans to relocate Frugyl had been abandoned. (*Id.*)

On September 12, 2014, without Plaintiff's knowledge, Defendants formed "Curaytor LLC" ("Curaytor Delaware"), a Delaware limited liability company. (*Id.*) Plaintiff was not listed as a member of Curaytor Delaware—while Frugyl remained in Michigan still d/b/a Curaytor LLC. (*Id.*) In the interim, Defendants refused to provide Plaintiff with tax and other financial information and issued Plaintiff distribution checks in amounts substantially lower than what he was

entitled.  (*Id.* at Pg ID 222-24.)  Finally, Defendants told Plaintiff they were

moving Frugyl to Delaware and merging into a new entity, Curaytor Delaware.

(*Id.* at Pg ID 224.)

Prior to the move, Defendants gave Plaintiff a draft of a new operating

agreement, the "Curaytor LLC Amended and Restated Limited Liability Company

Agreement"[2] ("New Operating Agreement"), which was dated October 31, 2014.

(*Id.* at Pg ID 224.)  Plaintiff was guaranteed a non-dilutable interest in Curaytor

Delaware, the same as his interest in Frugyl, which was included in the New

Operating Agreement.  (*Id.* at Pg ID 225-26; ECF No. 19-6 at Pg ID 556, § 3.2(b).)

On October 31, 2014, Frugyl merged with Curaytor Delaware, and the parties

operated under the New Operating Agreement; accordingly, Plaintiff maintained

his 10% non-dilutable interest in the company.  (ECF No. 16 at Pg ID 309.)

Meanwhile, Curaytor Delaware continued to grow exponentially, and Defendants

continued to withhold tax and other financial information.  (ECF No. 12 at Pg ID

226-27.)

---

[2] According to plaintiff, the copy of the New Operating Agreement was not signed
by any of Curaytor Delaware's members upon execution.  (*Id.* at Pg ID 225.)
Defendants correctly contend, however, signatures are not required.  (ECF No. 16
at Pg ID 310 (citing 6 *Del. C.* § 18-101(7) ("A member or manager … is bound by
the [LLC] agreement whether or not the member or manager … executes the
[LLC] agreement.")).)

4

In November 2016, Defendants attempted to buyout Plaintiff for a second time for $450,000, which Plaintiff rejected because he believed it did not represent the value of his interest. (ECF No. 12 at Pg ID 227.) Finally, Defendants attempted to buyout Plaintiff for a third time for $664,000, which Plaintiff rejected on September 11, 2017, believing the amount to be based on a "seriously flawed, wrongful and oppressive valuation." (*Id.* at Pg ID 229.) The next day, on September 12, 2017, Defendants notified Plaintiff that Curaytor Delaware merged with LMS Transition, LLC ("LMS"), with Curaytor Delaware as the surviving entity. (*Id.* at Pg ID 229.) The merger eliminated Plaintiff's interest, converting it into cash, as permitted by 6 *Del*. *C*. § 18-209(b). (*Id.*) Defendants sent Plaintiff a check for $664,000, purportedly representing the fair market value of his interest, which he immediately returned. (*Id.* at Pg ID 231, 233.)

In response, Plaintiff initiated this lawsuit on September 21, 2017. (ECF No. 1.) After Defendants filed a motion to dismiss, which was subsequently denied as moot on January 18, 2018, Plaintiff filed a twenty-four count amended complaint, alleging several violations of both Michigan and Delaware law. (ECF Nos. 10, 12 & 17.) Subsequently, Defendants filed the instant motion to dismiss on January 9, 2018. (ECF No. 16.)

## II.    Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

## III. Applicable Law & Analysis

In sum, Plaintiff complains that (1) the Frugyl Operating Agreement, the McClure Amendment and the New Operating Agreement precluded the merger of LMS and Curaytor Delaware and thereby constitutes a breach of the agreements; (2) the conversion of his interest into cash, as a result of the merger, constitutes a breach of the agreements; (3) the merger was unlawful because LMS was not a legitimate company; (4) the merger was unlawful because it had no legitimate business purpose; and (5) the merger was unlawful because it fails the entire fairness standard. Notwithstanding the resolution of these claims, Plaintiff also complains that he is entitled to distributions that Defendants have unlawfully withheld and that the Howell valuation of his interest is inaccurate and artificially depressed, both violating the agreements and Defendants' fiduciary duties.

Aside from arguing that Delaware law is controlling, Defendants advance the following arguments in support of their motion to dismiss. First, Defendants

argue that Plaintiff does not have a claim for breach of contract because the language of the agreements did not prohibit a merger, and Delaware law permits an LLC to convert a member's interest into cash in connection with a merger. Second, Defendants argue that Plaintiff's interest was not *diluted* because dilution means the reduction of interests as a result of the issuance of new equity and not the conversion of existing equity into cash. Third, Defendants argue that Plaintiff's claim that LMS is illegitimate is completely without merit. Fourth, Defendants argue Delaware law has no business purpose requirement, the $664,000 check issued to Plaintiff was the fair market value of his interest, and Plaintiff did not allege that the appraiser of his interest, Howell, was unqualified or lacked independence; therefore, the merger between LMS and Curaytor Delaware was not unlawful. Fifth, Defendants argue that Plaintiff has failed to sufficiently allege facts demonstrating the violation of any provision of the agreements or Defendants' fiduciary duties, if even applicable. Finally, Defendants argue that Plaintiff's state law claims fail for various reasons under Michigan and Delaware law.

### A. Which Law Applies—Delaware or Michigan?

In essence, the crux of this case is a series of contractual disputes. An LLC's operating agreement is a contract between its members. Mich. Comp. Laws § 450.4102(2)(r) (defines an "operating agreement" as a written agreement among

8

members of a limited liability company that pertain to its affairs and the conduct of business); *see Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 880–81 (Del. Ch. 2009) (LLC's are "creatures of contract."); *see, e.g.*, *BSA Mull, LLC v. Garfield Inv. Co.*, No. 310989, 2014 WL 4854306, at *12 (Mich. App. Sept. 30, 2014) (an LLC's operating agreement is "a contract … construed according to principles of contract interpretation.")[3]. Neither party challenges the validity of the Frugyl Operating Agreement and McClure Amendment. Since the Frugyl Operating Agreement contained a choice of law provision, also incorporated into the McClure Amendment, the laws of Michigan govern the "validity, construction and performance" of these agreements. (ECF. No. 1-2 at Pg ID 55, § 13.3.)

### a. The 2014 Merger

Plaintiff challenges the 2014 merger of Frugyl and Curaytor Delaware as a violation of Defendants' contractual duties under the Frugyl Operating Agreement and the McClure Amendment. However, there is no language in either agreement that precluded Frugyl from a merger. In fact, a merger was expressly permitted upon approval of the voting members. (ECF No. 1-2 at Pg ID 50, § 6.1(d).) Since Plaintiff waived his membership voting rights, which included the right to vote to disapprove of a merger, his consent was not required to effectuate the merger.

---

[3] The Court recognizes this is an unpublished opinion with no precedential value but uses the opinion as an example and persuasive authority.

Furthermore, as a member not entitled to vote, Plaintiff had no recourse under Michigan law to veto the remaining members' unanimous approval of the merger. MCL § 450.4702(1) ("A unanimous vote of the *members entitled to vote* … is required to approve a merger.") (emphasis added). Thus, Plaintiff's challenge to the 2014 merger fails as a matter of law.

As Defendants contend, Curaytor Delaware is a Delaware limited liability company. (ECF No. 16 at Pg ID 311-12.) Defendants properly cite to Mich. Comp. Laws § 450.5001, which provides that "the laws of the jurisdiction under which a foreign limited liability company is organized shall govern its organization and internal affairs." Under Delaware law, an LLC's operating agreement "define[s] the character of the company and the rights and obligations of its members." *Kuroda*, 971 A.2d at 880. Given the Court's finding that the 2014 merger did not require Plaintiff's consent, once Frugyl merged with Curaytor Delaware, the existence of Frugyl ceased, the Frugyl Operating Agreement and McClure Amendment became obsolete and the New Operating Agreement came into effect. Accordingly, Plaintiff maintained a 10% non-dilutable, non-voting interest in and his ability to compete with Curaytor Delaware. Additionally, as a result of the New Operating Agreement's choice of law provision, the agreement and Curaytor Delaware was henceforth governed by the laws of Delaware. (ECF. No. 19-6 at Pg ID 580, § 12.4.)

### b. The 2017 Merger

Plaintiff also challenges the 2017 merger of LMS and Curaytor Delaware as "unlawful," "illegitimate" and a "sham." (ECF No. 12 at Pg ID 199-200.) Under Delaware law, "an agreement of merger … or a plan of merger shall be approved by each domestic [LLC] which is to merge." 6 *Del. C.* § 18-209(b). The New Operating Agreement does not contain language that either dictates the exact voting requirements for a merger's approval or prohibits it. (*See* ECF No. 19-6.) Therefore, upon approval of its voting members, Curaytor Delaware lawfully merged with LMS. *See, e.g.*, *Fisk Ventures, LLC v. Segal*, No. CIV.A. 3017-CC, 2008 WL 1961156, at *8-10 (Del. Ch. May 7, 2008) (dismissing breach of contract claim because allegations did not constitute a breach under the plain language of the LLC agreement)[4].

### i. Additional Challenges to the 2017 Merger

Although Plaintiff complains that LMS is not a legitimate company, he has neither sufficiently alleged facts nor provided the Court with any legal authority to support this claim. Additionally, Plaintiff argues that the 2017 merger was unlawful because it had no "legitimate" business purpose. (ECF No. 12 at Pg ID 199, ¶ 21.) However, such a requirement is "no longer the law of Delaware"

---

[4] The Court recognizes this is an unpublished opinion with no precedential value but uses the opinion as an example and persuasive authority.

and "of any force or effect." *Weinberger v. UOP, Inc.*, 457 A.2d 701, 704, 715 (Del. 1983). Plaintiff responds by claiming that the merger must still meet the entire fairness standard articulated in *Weinberger*. The *Weinberger* court, however, specifically requires that a "plaintiff in a suit challenging a cash-out merger [] allege specific acts of fraud, misrepresentation, or other items of misconduct to demonstrate the unfairness of the merger terms to the minority." *Id*. at 703 ("even though the ultimate burden of proof is on the majority shareholder to show by a preponderance of the evidence that the transaction is fair, it is first the burden of the plaintiff attacking the merger to demonstrate some basis for invoking the fairness obligation."). Plaintiff has failed to allege facts that rise to the level of fraud, misrepresentation or unlawful conduct; therefore, although *applicable* to cash-out mergers, the Court is not required to apply the entire fairness standard at this time. *Id.* at 715.

Finally, Plaintiff argues that, as a consequence of the merger, Defendants violated their fiduciary duties to Plaintiff under the New Operating Agreement. The Delaware LLC Act, however, allows LLCs to eliminate fiduciary duties owed to a LLC manager or member through provisions in the LCC agreement, provided that the implied contractual covenant of good faith and fair dealing remain. 6 *Del. C*. § 18-1101(c). Since the New Operating Agreement, in accordance with Delaware law, expressly eliminated any member's liability for breach of fiduciary

duties, ECF No. 19-6 at Pg ID 558, § 3.8, Plaintiff's argument fails as a matter of law. *See, e.g.*, *Fisk Ventures, LLC*, 2008 WL 1961156 at *11 (dismissing breach of fiduciary claim because the LLC agreement eliminated fiduciary duties).

Therefore, the Court finds Plaintiff has neither sufficiently alleged a viable claim that the 2014 merger of Frugyl and Curaytor Delaware nor the 2017 merger of LMS and Curaytor Delaware were unlawful.

Given the Court's findings, it will now individually address and resolve Plaintiff's twenty-four claims.

### B. Plaintiff's Claims

#### a. Count I: Breach of Contact (Michigan Law)

Plaintiff claims Defendants breached, under Michigan Law, the Frugyl Operating Agreement, the McClure Amendment and the New Operating Agreement through (1) the merger of LMS and Curaytor Delaware and resulting conversion of his interest, (2) their failure to pay equal distributions and (3) their payment of less than fair market value for Plaintiff's interest in Curaytor Delaware.

Since each of Plaintiff's breach of contract claims relate to the conduct of Curaytor Delaware, which is governed by Delaware law, Plaintiff has failed to allege a claim for which relief can be granted. Therefore, the Court grants the Defendants' motion to dismiss Count I.

### b. Count II: Breach of Contract (Delaware law)

Plaintiff claims Defendants breached, under Delaware law, the Frugyl Operating Agreement, the McClure Amendment and the New Operating Agreement through (1) the merger of LMS and Curaytor Delaware and resulting conversion of his interest, (2) their failure to pay equal distributions and (3) their payment of less than fair market value for Plaintiff's interest in Curaytor Delaware.

Plaintiff argues that Defendants breached the New Operating Agreement when it converted his interest into cash, as a result of the merger, because it violated the agreement's anti-dilution provision. Defendants respond that the New Operating Agreement prohibited "dilution," a reduction in interest as a consequence of the issuance of new equity, but not *conversion*. Under Delaware law, LLC agreements, like contracts, are interpreted according to their "plain meaning." *CelestialRX Invs., LLC v. Krivulka*, No. CV 11733-VCG, 2017 WL 416990, at *16 (Del. Ch. Jan. 31, 2017)[5]. Dilution is defined as "[t]he reduction in the monetary value or voting power of stock by increasing the total number of outstanding shares." Black's Law Dictionary (10th ed. 2014). In effect, Plaintiff's interest was not diluted because neither the monetary value nor voting power of

---

[5] The Court recognizes this is an unpublished opinion with no precedential value but uses the opinion as an example and persuasive authority.

Plaintiff's interest lessened; rather, his 10% interest was effectively eliminated through its conversion into cash.

To further illustrate this distinction, Curaytor Delaware's members might have voted to dissolve the company and cease operations; accordingly, Plaintiff would be entitled to the fair market value of his interest. Under these circumstances, the anti-dilution provision could not then be used to block the dissolution of the company and mandate the remaining members continue to operate business as usual. The same logic applies to the present circumstances; the anti-dilution provision cannot be used to block a lawful conversion of Plaintiff's interest. The Delaware LLC Act specifically provides that "[i]n connection with a merger … interests in a domestic [LLC] … may be exchanged for or converted into cash." *6 Del. C.* § 18-209. Consequently, the Court, adhering to the plain meaning of the New Operating Agreement's anti-dilution provision, will not interpret it to guarantee Plaintiff's interest in Curaytor Delaware in perpetuity and against a lawfully permitted cash conversion. Given Plaintiff has not demonstrated that any of the parties' agreements or any Delaware laws prohibit the conversion of his interest, or that they require his consent, Plaintiff's argument fails as a matter of law.

As discussed above, the Court finds (1) the Frugyl Operating Agreement and the McClure Amendment are obsolete and irrelevant and (2) the merger of LMS

and Curaytor Delaware and conversion of Plaintiff's interest did not breach the New Operating Agreement. Under these two theories, Plaintiff's breach of contract claim fails.

Accepting Plaintiff's factual allegations as true, he has alleged multiple instances where Curaytor Delaware has withheld distributions and tax and financial information. Additionally, Plaintiff challenges the Defendants' appraisal of his interest, enumerating several reasons why his interest may have been undervalued. Thus, the Court believes that Plaintiff has sufficiently alleged two plausible claims for breach of the New Operating Agreement. Therefore, the Court will deny the Defendants' motion to dismiss Count II.

### c. Count III and IV: Breach of Contract (Michigan and Delaware Law)

Plaintiff claims that Frugyl, under both Michigan and Delaware law, unlawfully merged with Curaytor Delaware in 2014 in violation of the Frugyl Operating Agreement and the McClure Amendment. As discussed above, the Court finds that Frugyl neither violated the Frugyl Operating Agreement and the McClure Amendment nor unlawfully merged with Curaytor Delaware. Therefore, the Court will grant the Defendants' motion to dismiss Count III and IV.

### d. Count V and VI: Breach of Contract (Michigan and Delaware Law)

Plaintiff claims that Defendants breached the New Operating Agreement, under both Michigan and Delaware law by failing to pay Plaintiff distributions to which he was entitled in 2015, 2016 and 2017 causing at least $160,915 in damages. First, as discussed above, Delaware law governs the New Operating Agreement. As such, Plaintiff's claim under Michigan law is dismissed. Second, Plaintiff's Delaware breach of contract claim is duplicative of Count II. Thus, the Court will grant the Defendants' motion to dismiss Count V and VI, directing Plaintiff to pursue this claim under Count II.

### e. Count VII: Breach of Contract (Michigan and Delaware Law)

Plaintiff claims that Defendant's breached the Frugyl Operating Agreement and the McClure Amendment, under Michigan and Delaware law, through an enumerated list of conduct that is either unsupported by legal authority, duplicative, vague or conclusory. As a result, Plaintiff has failed to sufficiently allege a claim for breach of contract. Therefore, the Court will grant the Defendants' motion to dismiss Count VII.

### f. Count VIII and IX: Breach of Fiduciary Duty (Michigan and Delaware Law)

First, Plaintiff claims that almost all of Defendants' alleged conduct was a breach of their fiduciary duties to him, under both Michigan and Delaware law. As discussed above, under the New Operating Agreement and Delaware law, Defendants were exempt from liability for breaches of fiduciary duties.

Second, Defendants argue that Plaintiff's claim under Michigan law is time barred. MCL § 450.4404(6) (a breach of fiduciary duty claim must be brought "within 3 years after the cause of action has accrued or within 2 years after the cause of action is discovered or should reasonably have been discovered by the complainant, whichever occurs first."). Since Plaintiff claims Defendants' conduct related to the 2014 merger breached their fiduciary duties under the Frugyl Operating Agreement and McClure Amendment, the claim must be brought within two years of the October 31, 2014 merger. Since this lawsuit was initiated on September 21, 2017—almost three years after the merger, the claim is time barred.

This claim also fails for two independent reasons. One, fiduciary duties were owed to the company not Plaintiff. MCL § 450.4404(1) ("A manager shall discharge the duties of manager in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances, and in a manner the manager reasonably believes to be *in the best interests of the [LLC]*.")

(emphasis added); *see, e.g.*, *BSA Mull, LLC*, 2014 WL 4854306 at *6 ("The [Michigan LLC Act's] requirement that a manager discharge duties 'in the best interests of the [LLC]', MCL 450.4404(1), indicates that a manager's fiduciary duties are owed to the company, not the individual members."). Two, even if Plaintiff were correct that fiduciary duties were owed to him, he has failed to allege facts sufficient to support a claim that Defendants' conduct breached this duty.

Therefore, the Court will grant the Defendants' motion to dismiss Count VIII and IX.

### g. Count X: Violation of MCL § 450.4515

Plaintiff failed to sufficiently allege facts that establish Defendants' acts constitute "illegal or fraudulent … willfully unfair and oppressive conduct," necessary to substantiate a claim under Mich. Comp. Laws § 450.4515(1). Ironically, if the Court found Plaintiff did establish grounds for relief under this statute, it may grant an order providing the fair market value purchase of Plaintiff's interest by the members responsible for the wrongful acts, *id*. at § 450.4515(1)(d)—the very result Defendants desire. Regardless, Plaintiff has failed to allege facts that establish this claim. Therefore, the Court will grant the Defendants' motion to dismiss Count X.

### h. Count XI[6], XII, XIII: Conversion (Michigan and Delaware Law)

Plaintiff claims, under Michigan and Delaware law, Defendants engaged in an unlawful conversion by converting his 10% interest into cash as a result of the 2017 Merger. Since Plaintiff is challenging conduct surrounding the merger of LMS and Curaytor Delaware, two Delaware LLCs, Delaware law governs. Under Delaware law, Plaintiff failed to establish that the conversion of his interest by Defendants was a wrongful exertion of dominion over his property. *See Kuroda*, 971 A.2d at 889-90 (Del. Ch. 2009). The Court believes that Plaintiff's claim of conversion is almost identical to that of the Plaintiff in *Kuroda*. Accordingly, the Court dismisses Plaintiff's claim for the same reasons: (1) "the plaintiff's claim arises solely from a[n alleged] breach of contract [and] the plaintiff generally must sue in contract, and not in tort"; and (2) "[m]erely alleging that defendants violated their duty against conversion of property is circular, and the Court is not required to accept such a conclusory allegation as true." *Id.* (internal quotation marks and citations omitted). Therefore, the Court will grant the Defendants' motion to dismiss Count XI, XII and XIII.

---

[6] The Amended Complaint mistakenly duplicates Count X, which should have been labelled Count XI. (ECF No. 12 at Pg ID 254, 257.)

### i. Count XIV and XV: Specific Performance (Michigan and Delaware Law)

Under both Michigan and Delaware law, specific performance is recognized as a remedy and not a cause of action. *Berger Enters. v. Zurich Am. Ins. Co.*, No. 15-CV-13879, 2016 WL 4011262, at *5 (E.D. Mich. July 27, 2016) (dismissing claim for specific performance because "specific performance is not a cause of action; it is a remedy"); *Boulden v. Albiorix, Inc.*, No. CIV.A. 7051-VCN, 2013 WL 396254, at *12 (Del. Ch. Jan. 31, 2013), *as revised* (Feb. 7, 2013) ("Although phrased as a claim, specific performance is a form of equitable relief dependent upon an underlying cause of action."). Still, Plaintiff's breach of contract claim under Count II has survived the present motion to dismiss; thus, his request for specific performance under Delaware law may be viable. Therefore, the Court will grant the Defendants' motion to dismiss Count XIV, and deny the Defendants' motion to dismiss Count XV.

### j. Count XVI and XVII: Civil Conspiracy (Michigan and Delaware Law)

Plaintiff claims, under Michigan and Delaware law, that Defendants engaged in a conspiracy to convert his personal property by means of fraud, misrepresentation and deceit. However, as previously discussed, Plaintiff has failed to sufficiently allege facts that support his claims of fraud, misrepresentation

or conversion.  *See, e.g.*, *Kuroda*, 971 A.2d at 892 (dismissing conversion claim because plaintiff failed to properly allege the elements of an underlying wrong that would be actionable in the absence of a conspiracy).  Therefore, the Court will grant the Defendants' motion to dismiss Count XVI and XVII.

### k.  Count XVIII and XIX: Unjust Enrichment / Quantum Meruit (Michigan and Delaware Law)

Plaintiff claims, under Michigan and Delaware law, Defendants have been unjustly enriched from their conversion of his interest.  Under both Michigan and Delaware law, however, a plaintiff can state a claim for unjust enrichment only where no express contract exists.  *See Convergent Grp. Corp. v. Cty. of Kent*, 266 F. Supp. 2d 647, 661-62 (W.D. Mich. 2003) ("Where the parties have an enforceable contract and merely dispute its terms, scope, or effect, one party cannot recover from . . . unjust enrichment. . . . Therefore, this claim will be dismissed.") (citation and internal quotation marks omitted); *see also, e.g.*, *Kuroda*, 971 A.2d at 890-92 ("A claim for unjust enrichment is not available if there is a contract that governs the relationship between parties that gives rise to the unjust enrichment claim.").  As discussed above, the Court finds enforceable agreements existed between Plaintiff and Defendants.  Therefore, the Court will grant the Defendants' motion to dismiss Count XVIII and XIX.

### l.  Count XX: Declaratory Relief

Any court of the United States has the discretion to declare the rights or other legal relations of any interested party seeking such declaration.  28 U.S.C. § 2201.  Accordingly, the Court has stated its findings and legal conclusions, resolving each of Plaintiff's enumerated controversies for which he requested declaratory relief, throughout the instant opinion and order.  Having resolved the issues in controversy, the Court sees no reason to dismiss this claim.  Therefore, the Court will deny the Defendants' motion to dismiss Count XX.

### m. Count XXI and XXII: Accounting (Michigan and Delaware Law)

Plaintiff requests an accounting, under Michigan and Delaware law, to resolve the disputes over Curaytor Delaware's finances.  As discussed above, Curaytor Delaware is governed by the laws of Delaware.  As such, Plaintiff's claim under Michigan Law is dismissed.  Defendants argued that Plaintiff's claim is misplaced because accounting is a form of relief and not a cause of action. Plaintiff, however, correctly cites to persuasive authority that discourages the dismissal of his request.  Similar to the Plaintiff in *Rhodes v. Silkroad Equity, LLC*, Plaintiff has stated a claim for breach of contract, arguing Defendants have withheld distributions as well as the fair market value of his interest, which make his request for accounting warranted.  No. CIV. A. 2133-VCN, 2007 WL 2058736,

at *11 (Del. Ch. July 11, 2007)[7].  For these reasons, the Court will deny the

Defendants' motion to dismiss Count XXII, and grant the Defendants' motion to

dismiss Count XXI.

### n. Count XXIII and XXIV: Imposition of a Constructive Trust
### (Michigan and Delaware Law)

Under both Michigan and Delaware law, imposition of a constructive trust is

a remedy, not a cause of action.  *See, e.g.*, *Teall v. One W. Bank*, No. 318815, 2015

WL 728562, at *6 (Mich. Ct. App. Feb. 19, 2015) ("[A] constructive trust is not an

independent cause of action; it is an equitable remedy. Thus, the count in plaintiff's

complaint that sought to impose a constructive trust was legally insufficient to state

a claim.") (citation omitted); *Teachers' Ret. Sys. of La. v. Aidinoff*, 900 A.2d 654,

670 n.22 (Del. Ch. 2006) ("Unless a plaintiff can prove out a claim under a

recognized cause of action—such as one for fraud, breach of fiduciary duty, or

unjust enrichment—the plaintiff should have no eligibility for any remedy,

including the remedy of constructive trust.").  As previously discussed, Plaintiff

has failed to sufficiently allege an underlying wrong or unlawful act of Defendants

that justify the imposition of a constructive trust.  Therefore, the Court will grant

the Defendants' motion to dismiss XXIII and XXIV.

---

[7] The Court recognizes this is an unpublished opinion with no precedential value
but uses the opinion as persuasive authority.

## IV.  Conclusion

Accordingly,

**IT IS ORDERED** that Defendants' motion to dismiss (ECF No. 16) is

**GRANTED, IN PART, and DENIED, IN PART**.

**IT IS FURTHER ORDERED** that Defendants' motion is **GRANTED** to

the extent that Counts I, III-XIV, XVI-XIX, XXI and XXIII-XXIV of the

Amended Complaint are dismissed.

**IT IS FURTHER ORDERED** that Defendants' motion is **DENIED** to the

extent that Counts II, XV, XX and XXII of the Amended Complaint survive

dismissal.

**IT IS SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: September 27, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of
record and/or pro se parties on this date, September 27, 2018, by electronic and/or
U.S. First Class mail.

s/ R. Loury
Case Manager
